J-A24022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF WILLIAM F. SULLIVAN, JR., A/K/A WILLIAM F. SULLIVAN, III, AN INCAPACITATED PERSON | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JAMES GIUNTA, GUARDIAN | : : : : | No. 231 WDA 2020 |

Appeal from the Order Entered January 23, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  02-84-R-2373

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JANUARY 04, 2021**

James Giunta, in his role as guardian of the person of William F. Sullivan, Jr., an incapacitated person, appeals from the orphans' court's order granting Appellee PNC Bank's Petition for Allowance to Consent to Donation Agreement ("Donation Petition"). We affirm.

Sullivan, an only child, is currently in his mid-60s. He suffers from various neurological conditions and requires 24-hour care. In 1984, he was declared an incapacitated person. When Sullivan's mother died in 2018, Giunta was appointed as guardian of Sullivan's person. Sullivan's guardianship estate ("Estate") has a current market value of approximately $7,985,000, from which his monthly care expenses of approximately $20,816 are paid. PNC Bank acts as the permanent plenary guardian of the Estate.

Sullivan's father, who also predeceased him, left him substantial assets via the William Sullivan, Sr., marital trust ("Trust"). Sullivan is the sole

beneficiary of the Trust and PNC Bank is the trustee. The Trust holds the sole ownership interest in Pittsburgh Penn Center Business Trust ("PPCBT"). PPCBT owns many parcels of land in Allegheny County. Several of the parcels have already been sold. At issue in this case are five parcels of undeveloped property ("Parcels"), owned by PPCBT, in North Versailles Township, Allegheny County.

In April 2019, PNC Bank filed the Donation Petition seeking court approval of a donation agreement, which would allow the Trust, via PPCBT, to donate the Parcels to North Versailles Township, but retain the Parcels' oil and gas rights ("Donation Agreement"). Attached to the Donation Petition was an appraisal of the Parcels, done by an appraiser hired by PNC Bank, valuing the Parcels in total at $157,500. PNC Bank also submitted the tax assessment value of the Parcels, as determined by Allegheny County, at $142,400. In its Donation Petition, PNC Bank contended that the Parcels had little to no actual market value but cost the Trust approximately $7,800 in taxes each year with no offsetting income. Giunta did not file a response to PNC Bank's petition.

The orphans' court conducted a hearing regarding the Donation Petition in December 2019. The court summarized the testimony as follows:

> Lynn DeLorenzo, a principal with the commercial real estate firm Tarquincore, stated that her firm has an exclusive listing agreement to sell the parcels of land, which was signed in January 2018. In attempting to sell the parcels, her company contacted property owners who owned land around the parcels. None of them were interested in purchasing the parcels. Ms. DeLorenzo described the parcels in great detail as follows: Parcel No. 1 is 55 acres of very steep hillside that runs along the river and is covered with trees and vegetation; Parcel No. 2 is 5,299 square feet of

residential land, with power lines running through it; Parcel No. 5 is 11.07 acres of densely wooded residential land with a cell phone tower constructed on it and a pipeline underneath it; and, Parcels No. 15 and 17, which are contiguous, are very steep wooded hillsides with a ravine in the rear. (Exhibits 1-5) With regard to residential development in North Versailles, Ms. DeLorenzo noted that it has been at least 15 years since a new home was built in the Township. (N.T. 12/09/19, pp. 7-20) While the assessed value of the properties is $142,000, Ms. DeLorenzo opined that the properties have no value and she does not believe that any further marketing will result in the sale of the properties. (N.T. 12/09/19, pp. 20-21, 39)

Alan Wagner, the Code Enforcement Officer for the Township, testified that development in the Township is "very difficult" and there has not been any new construction in many, many years. He stated that the five parcels in question are not developable, even though tax abatements are available, although he hopes to use the parcels that are next to existing parks to develop trails or green space. (N.T. 12/09/19, pp. 41-45)

Daniel Bunner, who is the Vice-President and Secretary of Sullivan Companies, which is an asset of the Trust, agrees with the Donation Agreement. He stated that the carrying costs for the properties are $7,500-$8,000/year. He further stated that the Donation Agreement reserves the oil and gas rights. (N.T. 12/09/19, pp. 51-56, 69)

Orphans' Ct. Pa.R.A.P. 1925(a) Op., 3/13/20, at 2-3.

Giunta appeared with counsel at the December hearing. Giunta's counsel did not present any evidence but did cross-examine PNC Bank's witnesses. As noted by the orphans' court, Giunta's main line of inquiry concerned whether the Parcels indeed had no marketable value, the efforts PNC Bank had made to sell the Parcels, and whether the proposed donation would result in any tax benefits for the Trust. *See id.* at 2.

The court issued an order on January 23, 2020, granting PNC Bank's Donation Petition. Giunta filed the instant timely appeal and both Giunta and the orphans' court complied with Pa.R.A.P. 1925.

Giunta raises the following issues for review:

> 1. Did the orphans' court commit legal error when it ignored PNC's judicial admissions of the assessed and appraised value of the subject properties, $157,500 and $142,400 respectively, and permitted PNC to contradict its own judicial admissions with lay opinion testimony in determining that the subject properties could be donated because they have "no value"?
>
> 2. Was the orphans' court decision that the subject properties have "no value" supported by the evidence, which showed that after spending only a few months actively trying to sell the properties, appraised at $157,500, and without making any effort to pursue other income producing or cost reducing measures for the subject properties, PNC merely gave up and sought to give trust property away?

Giunta's Br. at 3.

When we review an orphans' court decree we employ a deferential standard of review and "must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Fiedler*, 132 A.3d 1010, 1018 (Pa.Super. 2016) (*en banc*) (citation omitted). Further, because the orphans' court sits as the fact-finder, we will not reverse credibility determinations absent an abuse of discretion. *Id.* "However, we are not constrained to give the same deference to any resulting legal conclusions." *Id.* (citation omitted).

In his first issue, Giunta argues that the orphans' court erred by determining that the Parcels had "no value" due to PNC Bank's alleged judicial admission to the contrary. Giunta points to both the appraisal attached to PNC Bank's Donation Petition, appraising the Parcels as worth $157,500, and the county assessment of the Parcels as worth $142,400, and contends that the court should have deemed those values as dispositive. Accordingly, Giunta maintains that the court erred by crediting the testimony presented by PNC Bank regarding the difficulty in marketing and selling the Parcels and the testimony setting forth the resulting conclusion that the Parcels had little to no marketable value.

"[I]t is well settled that the admissibility of evidence is a determination left to the sound discretion of the trial court, and it will not be overturned absent an abuse of discretion or misapplication of law." **In re Fiedler**, 132 A.3d at 1025 (internal quotation and citations omitted). Further, it is axiomatic that relevant evidence is generally admissible but may be excluded if its probative value is outweighed by prejudice. **See** Pa.R.E. 402, 403. Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Pa.R.E. 401.

A judicial admission is a statement that is "a clear and unequivocal admission of fact." **Koziar v. Rayner**, 200 A.3d 513, 521 (Pa.Super. 2018) (citation omitted). "Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law." **Id.** (citation omitted). Furthermore, "[w]hen there is

uncertainty surrounding a conceded fact, it is the role of the judge or jury as fact finder to determine which facts have been adequately proved and which must be rejected." *Id*. at 522 (citation omitted). A principal element of a judicial admission "is that the fact has been admitted for the advantage of the admitting party." *Id*. (citation omitted) Moreover, a pleading must be viewed as a whole and an averment must be "viewed in the context of the remaining allegations and damages sought to be recouped." ***Branton v. Nicholas Meat, LLC***, 159 A.3d 540, 557 (Pa.Super. 2017). (citation omitted).

In this case, PNC Bank's inclusion of an appraisal in its Donation Petition and reference to the municipality's tax assessment does not constitute a judicial admission to one of the ultimate issues PNC Bank sought to prove, the value of the Parcels. ***See Koziar***, 200 A.3d at 521-22. Viewing PNC Bank's pleading as a whole, as we must, the appraisal and assessed value are but one piece to the puzzle regarding the value of the Parcels to the Trust. ***See Branton***, 159 A.3d at 557. To this end, the court was well within its purview to admit evidence regarding the ability of the Parcels to be sold in the current real estate market in North Versailles County and the potential for sale in the future. ***See In re Fiedler***, 132 A.3d at 1025. This evidence was certainly relevant regarding the value of the Parcels. ***See*** Pa.R.E. 401, 403. Therefore, we conclude that Giunta's first issue lacks merit.

In his second issue, Giunta contends that the orphans' court's decision to grant PNC Bank's Donation Petition was against the weight of the evidence. Giunta argues that DeLorenzo only marketed the Parcels for a few months

before deciding that they had "no value" and would be best donated. Further, he alleges that PNC Bank never properly investigated or accounted for any offsetting income producing uses of the Parcels such as timbering or the harvesting of oil and gas. Giunta also avers that PNC Bank failed to pursue a tax appeal to lower the assessed value of the Parcels. According to Giunta, this is significant because PNC Bank has pointed to the yearly tax liability of approximately $7,800 as the critical factor weighing on the side of donating the Parcels. Lastly, Giunta asserts that PNC Bank's action in agreeing to the donation of the Parcels violates its fiduciary duty pursuant to the prudent investor rule as set forth under 20 Pa.C.S.A. § 7203.

When reviewing a weight of the evidence claim, our standard of review is limited:

> [a]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa.Super. 2013) (*en banc*) (quoting *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)).

Moreover, in orphans' court matters, if an appellant raises a weight claim in a timely filed Pa.R.A.P. 1925(b) statement, the claim is preserved for

appellate review. *Id.* at 491-92. Here, Giunta has preserved his weight claim by raising it in his Pa.R.A.P. 1925(b) statement.

The orphans' court found Giunta's weight claim meritless in its Rule 1925(a) opinion for the following reasons:

> First, the evidence was clear and unequivocal that the five parcels of land are of no value. They are steep hillsides, densely wooded, and contain impediments, such as power lines, a cell phone tower, and an underground pipeline.
>
> Second, the properties were vigorously marketed for almost two years without any interest, not even a lowball offer.
>
> Third, the properties with no value are costing the Trust $7,500-$8,000/year in carrying costs and not producing any income to offset the costs. Moreover, as the Donation Agreement reserves the mineral rights, it is possible that the properties could produce an income in the future without continuing to incur property tax liability.
>
> Fourth, as the fair market value of the Guardianship estate is almost $ 8,000,000, even if there is a small tax liability incurred in donating the land, the estate will benefit in the long run by not continuing to pay the carrying costs.

Orphans' Ct. Pa.R.A.P. 1925(a) Op. at 4.

We discern no abuse of discretion in the orphans' court's decision to grant PNC Banks's Donation Petition. The orphans' court properly credited the testimony of DeLorenzo concerning the topographical challenges of the Parcels and her unsuccessful efforts toward marketing the Parcels. *See In re Fiedler*, 132 A.3d at 1018. In addition, the court aptly noted that the Donation Agreement reserved the mineral rights to the Parcels, so those income rights remained with PPCBT regardless of the donation of the Parcels. Moreover, the

court emphasized that eliminating the carrying costs incurred by maintaining the Parcels would benefit the Trust over the long term regardless of the relatively minor tax implications. Hence, Giunta's weight of the evidence claim does not warrant relief. **See In re Estate of Smaling**, 80 A.3d at 490.

Next, we note the Giunta presents argument regarding PNC Bank's alleged failure to act as a "prudent" fiduciary in the argument section of both of his issues on appeal, yet does not specifically reference this argument in his questions presented on appeal. This constitutes a violation of the Pennsylvania Rules of Appellate Procedure. **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"). However, because our review is not impeded, we do not find this issue waived. Also, PNC Bank contends that we should find Giunta's fiduciary argument waived due to his failure to specifically include it in his Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge"). However, we conclude that Giunta's Rule 1925(b) statement was sufficient to include this issue as he asserted the donation of the Parcels was "inconsistent with applicable law." Accordingly, we once again decline to find waiver.

In any event, we conclude that Giunta's claim regarding the prudent investor rule to be devoid of merit. Section 7203 provides "[a] fiduciary shall invest and manage property held in a trust as a prudent investor would, by considering the purposes, terms and other circumstances of the trust and by pursuing an overall investment strategy reasonably suited to the trust." 20 Pa.C.S.A. § 7203. As noted above, the court properly found that the donation of the Parcels to be within the overall best interests of the Trust. Therefore, we conclude that Giunta's argument regarding PNC Bank's alleged failure to act as a prudent fiduciary by consenting to the Donation Agreement must fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/4/2021